IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Gordon P. Gallagher, United States Magistrate Judge

Civil Action No. 18-cr-546-MSK-GPG

UNITED STATES OF AMERICA,

    Plaintiff,

v.

(2) MANUEL BLANCO-OCHOA,

    Defendant.

---

**RECOMENDATION REGARDING DEFENDANT'S MOTION TO DISMISS INDICTMENT (ECF #107)**

---

This matter comes before the Court on a motion to dismiss indictment filed by Defendant (ECF # 107)[1] and the Government's response (ECF# 112). The case has been referred to this Magistrate Judge and falls under the Western Slope/Grand Junction Protocol which allows me to address dispositive motions on recommendation (ECF #49)[2] as the parties have unanimously

---

[1] "(ECF #107)" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Recommendation.

[2] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Crim. P. 59(b)(2). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a

consented to my jurisdiction (ECF #17—this Defendant's consent). The Court has reviewed the pending motion, response, and all attachments. The Court has also considered the entire case file, the applicable law, and is sufficiently advised in the premises. This Magistrate Judge respectfully recommends that the motion be DENIED.

To some extent, the history of this issue is encapsulated in a prior recommendation (ECF#82) issued by the Court in this action. Defendant Blanco-Ochoa is not only being prosecuted by the Government in this action, he was also subject to removal proceedings. On December 12, 2018, the Court Ordered Defendant detained in this matter. *See* detention order (ECF #12). Based upon Defendant's unopposed motion for reconsideration (ECF #28), the Court issued conditions of release. *See* ECFs #43 & 44. Then, notice of disposition was filed (ECF #58) and a plea hearing was set for 9/3/2019. The Government requested (ECF #72) and the Court issued a writ to get Defendant from GEO (a detention facility) in Aurora to Grand Junction, some 250 miles and over the Rocky Mountains. The writ (ECF #74) Ordered that Defendant be held until the conclusion of the case—which meant until after sentencing. The purpose of the writ being issued in such fashion was to avoid Defendant being repeatedly transported back and forth over the Rocky Mountains multiple times in a 2-3 month time period, in the run-up to sentencing, and with winter coming.

The plea did not happen on that date. Defendant's then attorney was disbarred, and the Court would not accept a plea until Defendant had an opportunity to review the matter with new counsel. *See* ECFs # 64-66. The notice of disposition was specifically not withdrawn but the change of plea was continued to give new counsel an opportunity to be substantively involved in the case. Then, on the basis that the executive branch was using removal proceedings to hold

---

copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

Defendant when this Court had issued conditions of release, Defendant moved to dismiss this action. *See* ECF # 75. This Magistrate Judge recommended that the motion to dismiss be denied and simultaneously Ordered that the writ was vacated such that Defendant would be returned to ICE custody and any subsequent writ would be narrowly tailored to hold Defendant only so long as necessary to accomplish the purpose of any discrete hearing being conducted—with the concomitant result that Defendant would potentially be transported multiple times from GEO in Aurora to Grand Junction. *See* recommendation dated September 15, 2019 (ECF #82) which was adopted by the presiding District Judge (ECF #88).

Defendant appeared *pro se* on his immigration case on November 19, 2019. Government's supplement (ECF #98, p. 1). The Immigration Court inquired as to whether Defendant's criminal case was resolved and was informed that the criminal matter was not yet resolved due to the attorney disbarment. Defendant then requested to withdraw his cancellation (initially filed May 14, 2019) for removal, immediately waived appeal, and requested that he be deported. *Id.* at 2. Defendant was instructed by the Immigration Court that deportation did not mean that the criminal charges were going away and further instructed Defendant to inform the Criminal Court that he [Defendant] was being returned to Mexico. *Id.* Defendant did not inform the Court as instructed. Defendant was removed from the United States on November 26, 2019.

Defendant now moves to dismiss the indictment on varied bases that will be individually discussed below.

1. Abandonment

Defendant argues that by choosing to proceed on a dual track simultaneously as to both removal and the criminal action, the Government essentially chose to abandon the criminal matter when Defendant was deported. Defendant's motion to dismiss (ECF #107, p. 2). Defendant asserts that because the Executive Branch decided to prioritize deportation over criminal prosecution, the indictment should be dismissed and cites *U.S. v. Resendiz-Guevara*, 145 F. Supp. 3d 1128 (M.D. FL 2015), in support of this proposition. In *Resendiz-Guevara*, the defendant (indicted for illegal reentry) was afforded conditions of release under the Bail Reform Act (BRA) in the criminal action, yet ICE put in place a detainer in the removal action. *Resendiz-Guevara*, 145 F. Supp. 3d at 1131-32. In *Resendiz-Guevara*, the defendant was indicted for illegal reentry only after ICE referred the matter to the United States Attorney for Prosecution. *Id.* at 1135. The clear implication of *Resendiz-Guevara* is that two Executive Branch agencies were working together, but then dropped the ball—with the Attorney General (AG) failing to request a stay of removal to allow time for the criminal case to proceed. *Id*.

That is not analogous to the instant case. First, the matters are very different in character—the criminal action in this indictment is for conspiracy to distribute methamphetamine. However, dissimilarity would not necessarily offer the Government cover, but it is a factor to consider. More importantly, Defendant appears to have engineered this outcome—placing himself in a posture where he could argue that a conflict was created by two Executive Branch agencies. Defendant, was originally detained under the BRA, then requested conditions of release, a request not opposed by the Government. Defendant then opposed an overly expansive writ which—to some extent—was instituted to make life more convenient for the Defendant. Then Defendant abruptly and for all practical purposes, secretly, switched tacks from opposing to embracing removal—so quickly

4

that he was removed within seven (7) days of his Immigration Court hearing. To the extent that the AG may have wished to request a stay, neither the AG nor the Court was informed as instructed of the consummated removal proceedings. Thus, denying any opportunity for a stay to be granted.

Unlike in *Resendiz-Guevara*, in this action the Government did not abandon its prosecution. Abandonment suggests some level of knowledge or at minimum negligence. Rather, a review of the course of this case displays diligence on behalf of the Government in its prosecution of this matter. Once notice of disposition was filed, the Government had no reason to believe this matter was heading for anything other than a plea—until the unusual circumstances of the disbarment of Defendant's Counsel paused that course of action. That pause was forced, *sua sponte*, by the Court, *see* ECF #71, in an effort to ensure that Defendant had competent counsel before proceeding. Then, new counsel was appointed. On October 21, 2019, Defendant's Counsel, also the attorney who filed the motion to dismiss, filed a status report (ECF #84) indicating that Counsel met with Defendant and that the Defense intended to involve or consult with an immigration attorney. After conferral with the Government, the Defense then requested leave to file a further update within forty-five (45) days and agreed that the notice of disposition remained pending and had the effect of tolling speedy trial. Thirty-six (36) days later Defendant was removed—while the Government had every reason to believe Defendant was still proceeding towards a change of plea based on a negotiated disposition that was delayed but not rejected.

As to Defendant's theory that proceeding with both actions simultaneously, this Court has already implicitly and now explicitly determines that the Defendant is incorrect as to this analysis. This Court finds persuasive the recent Order issued by The Honorable Judge Arguello, United States District Court Judge for the District of Colorado, in that there is not an irreconcilable conflict between the BRA and Immigration and Naturalization Act (INA) and that there is an explicit

5

contemplation of parallel proceedings. *United States v. Ramirez-Arenas,* 2019 WL 2208529 *5 (D. Colo. 2019) (internal quotations and citations removed—citing to *United States v. Ailon-Ailon*, 875 F.3d 1334 (10th Cir. 2017)). "ICE's authority to facilitate an illegal alien's removal from the country does not disappear merely because the U.S. Marshal cannot detain him under the BRA pending his criminal trial." *United States v. Vasquez-Benitez*, 919 F.3d 546, 553 (D.C. Cir. 2019). No violation, either Constitutional or statutory, exists when a Defendant is granted conditions of release under the BRA but is held under the INA. *See Ramirez-Arenas,* 2019 WL 2208529 *5.

2.  Violations of the Court's Order setting conditions of release and the BRA

Defendant again raises the issue, previously litigated, that the Government violated the Court's Order setting conditions of release and the BRA. The Court previously addressed this issue in detail. *See* Recommendation (ECF #82) and Order upholding that Recommendation (ECF #88). The Court declines to readdress this issue and incorporates the prior Recommendation (ECF #88) herein by way of again determining that Defendant's argument again fails on this point.

3.  Fifth and Sixth Amendment violations

Defendant argues that his Sixth Amendment rights have been violated because he is unable to consult with Counsel, unable to review the evidence, and unable to prepare a defense. This argument is factually unsupportable. Defendant's Counsel can and is vigorously defending this action—as is evidence by a series of recent filings. But, Defense Counsel cannot be expected to defend the matter alone and must be able to have reasonable communication with Defendant so

that Defendant may Constitutionally assist in his defense. In terms of communications, in this modern world, nothing prevents cross border communication, e.g., phone, email, Skype, Facetime and the like. Defendant's deportation is no bar to electronic communications. Finally, as to the idea that Defendant cannot review the evidence against him, the Court finds little merit to that argument. Clearly, the Government must provide discovery to the Defense. There is nothing preventing the Defense from re-duplicating that evidence, sending a copy to Defendant—perhaps on a zip drive—and then engaging in review of that evidence. Attorneys and their clients consult remotely on a regular basis. Other than bald assertions, the Defense has made no showing as to why such consultation would not be possible here and has in no way shown why the Defense would not be able to prepare a defense in this action. As to speedy trial, Defendant engineered his own deportation and cannot now rely on that as a reason to think his Sixth Amendment rights have been violated.

As to claimed violation of Defendant's Fifth Amendment rights, that argument also is meritless. Defendant is not going to be tried *in absentia*. Defendant was properly indicted by a grand jury. Defendant essentially engineered his own deportation. He cannot now present a reasonable claim that his rights have been violated on the basis that a trial is delayed when he created that delay by his own actions.

Therefore, the Court respectfully recommends that the motion to dismiss be DENIED.

Dated at Grand Junction, Colorado this March 19, 2020.

Gordon P. Gallagher

United States Magistrate Judge